IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **DENISE FELDER-WARD,** | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 9246 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| **FLEXIBLE STAFFING SERVICES INCORPORATED,** | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Denise Felder-Ward ("Felder-Ward") brought this action *pro se* under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), alleging that Defendant Flexible Staffing Services Incorporated ("Flexible") subjected her to unfavorable employment conditions based on her race and terminated her from a placement at a Clorox plant because she complained of discriminatory treatment. Flexible has moved for summary judgment. For the reasons that follow, Flexible's motion [47] is granted.

## **Background**[1]

Flexible is a staffing agency that assigns its employees to clients seeking labor; Felder-Ward was one of its employees. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 1–3, 8, ECF No. 49. Initially, Flexible hired and assigned Felder-Ward to a client, Exel, which operated a plant owned by

---

[1] The following facts are undisputed unless otherwise noted. Additionally, Plaintiff is proceeding in this matter *pro se*. Flexible initially failed to comply with Local Rule 56.2, which requires defendants moving for summary judgment against a *pro se* plaintiff to serve the plaintiff with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment." The Court therefore struck Flexible's original motion for summary judgment and granted it leave to re-file the motion, together with the requisite Notice. *See* 3/24/17 Min. Entry, ECF No. 46. Flexible complied with the Court's order. *See* Notice to Pro Se Litigant, ECF No. 50. Plaintiff was then granted additional time to submit an amended opposition to the motion for summary judgment, which she declined to do. *See id;* 3/30/17 Min. Entry, ECF No. 52; *see generally* ECF Nos. 53–55.

Clorox. *Id.* at 2–3, 8. During her time at the Clorox plant, Felder-Ward worked as a "general laborer," and her responsibilities—which changed frequently—included assembling boxes and other packaging-related activities. *Id.* ¶¶ 10–11; Def.'s Mem. Supp. Mot. Summ. J., Ex. E, Felder-Ward Dep. (hereafter "Pl.'s Dep.") at 27:10–14, ECF No. 48-5. Felder-Ward's supervisors at the plant were employees of Exel, Def.'s LR 56.1(a)(3) Stmt. ¶ 11; Pl.'s Dep. at 16:20–24, 18:3–10, 22:4–11, although she maintains that Flexible employees "also told [her] what to do." Pl.'s Resp. Def.'s LR 56.1(a)(3) Stmt. ¶ 11, ECF No. 53. Felder-Ward worked at the plant during two stints: first from late May through mid-July 2012, and then again from late July through December 3, 2012. Pl.'s Dep. at 12:1–8, 20:9–12, 92:2–12.

Several incidents occurred while Felder-Ward worked at the plant that she believes resulted from discrimination due to the fact that she is African-American. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 5, ECF No. 54;[2] Pl.'s Dep. at 96:20–21. First, an Exel supervisor asked Felder-Ward, while assembling boxes, to move to a different table and assemble different boxes that were larger. *See* Pl.'s Dep. at 34:22–36:15. Two Hispanic co-workers who wanted to assemble the boxes she was assembling took her place. *Id.* at 35:13. At a later date, a similar incident occurred. Felder-Ward was assembling boxes at a table with a group of African-American co-workers when Katrina, a Flexible employee, asked her and a co-worker to move to another table, on behalf of an Exel supervisor. *See id.* at 38:20–43:5; 17:4–18:6. The supervisor did not, however, split up a similarly sized group of Hispanic workers. *See id.* at 44:16–19. And on another occasion, while Felder-Ward was working on an assembly line across from a Hispanic co-worker, an Exel supervisor moved the Hispanic co-worker and replaced her with an African-

---

[2] On the second page of her statement of additional facts, Felder-Ward included the header, "Plaintiff(s) Cross Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment." All that follows after this heading, however, is Felder-Ward's statement of additional facts. She did not file or separately notice any motion for summary judgment.

American co-worker. *See id.* at 46:14–50:9; 22:4–11. Felder-Ward believes the Hispanic co-worker did not want to work with her because of her race. *Id.* at 50:24–51:3. She believes this sort of substitution occurred "two or three times." *Id.* at 51:23.

In addition to these incidents, Felder-Ward was at one juncture denied leave that she had hoped to take on a certain afternoon in order to accompany her granddaughter to an eye doctor's appointment. *Id.* at 60:13–61:9. James Lyall ("Lyall"), a Flexible supervisor who visited the plant each morning, *id.* at 16:1–24, told her that no one could take leave, and that if they did, their assignment at the Clorox plant would be terminated. *Id.* at 61:4–22. Despite this warning however, two Hispanic employees—Ricky and Patricia—were permitted to leave early that afternoon. *Id.* at 61:23–62:13. They were permitted to leave early again two days later and returned to work thereafter. *Id.* at 65:4–5. At that time, Felder-Ward complained to Lyall about differential treatment. *Id.* at 64:2–12.

In addition to these incidents, Felder-Ward's claims against Flexible arise from a complaint she made to Clorox. On October 9, 2012, she witnessed a gang fight between Hispanic workers and an African-American worker at the plant. *See generally id.* at 68:1–71:8. Later that day, she called Clorox and complained about the fight. *Id.* at 71:15–72:5. In addition to complaining about the fight, she complained that she was being treated differently at the plant because of her race. *Id.* at 72:7–13. She also complained about the fight to Lyall. *Id.* at 73:9–15. Felder-Ward believes that, because she complained to Clorox, she was required to do tasks, including moving charcoal, that other workers—particularly Hispanic workers—were not required to do. *Id.* at 72:12–17, 74:10–17.

In November 2012—"over a month" after she complained to Clorox—Lyall called a meeting of Flexible employees at the plant. *Id.* at 76:1–76:19. Prior to the meeting, Lyall met with Felder-Ward and told her that the meeting was not about her. *Id.* at 76:1–9. At the meeting,

3

Lyall told Flexible's employees that he had heard that someone had phoned Clorox to report the gang fight, and that if they wanted to keep their jobs, they should not call Clorox again. *Id.* at 76:14–19.

Another month passed. Then, on December 3, 2012, Felder-Ward was informed that her placement at the plant was being terminated. *Id.* at 80:13–15. She believes her termination was punishment for her complaints to Clorox. *Id.* at 96:22–97:1. The Flexible representative that called her to notify her that her placement was being terminated, however, explained that "they was [sic] shutting down five lines and that the work was slow." *Id.* at 93:3–4. Lyall had spoken with Felder-Ward prior to the call, explaining to her that layoffs would be occurring, seniority would not be a factor, and an Exel employee—Matt Simon—would determine who was going to be laid off. *Id.* at 93:17–94:9.

In fact, the decision to terminate Felder-Ward's placement was made by Simon as part of reducing the workforce at the Clorox plant by thirteen employees. Def.'s LR 56.1 ¶ 15.[3] Flexible terminated Felder-Ward at Simon's request. *Id.* Under Flexible's contract with Exel, Exel has total control over which employees are placed at its facilities and can instruct Flexible to terminate a placement at any time. *Id.* ¶ 4; Def.'s Mot. Summ. J., Ex. B, at 8, ECF No. 48-2.[4] Simon had previously informed Lyall that workers had complained about Felder-Ward cursing

---

[3] In response to this and all facts in this paragraph, Felder-Ward responded that she was "unable to admit or deny" because she had "no knowledge of that fact." It is well-established, however, that such a response is insufficient to create a genuine dispute of material fact on summary judgment. *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1096–97 (N.D. Ill. 2016) (collecting cases). And while the Court recognizes that Felder-Ward is a *pro se* plaintiff, there is nothing in the record to suggest Felder-Ward could deny these facts—which happen to be consistent with her own deposition testimony.

[4] Felder-Ward responded to Flexible's description of its contract with Exel by denying that her work was unsatisfactory. Pl.'s Resp. Def.'s LR 56.1 ¶ 4. She did not, however, deny the description of the contract, and there is no reason to think she would have any good-faith basis for doing so.

and harassing other employees. Def.'s LR 56.1 ¶¶ 13–14.[5] Because no workers were willing to submit their complaints in writing, however, Simon had determined not to request that her placement be terminated at that time. Def.'s LR 56.1 ¶ 14. It is not clear whether Simon asked that Felder-Ward be terminated because of her co-workers' complaints.

Despite terminating Felder-Ward's placement at the Clorox plant, Flexible retained her information in order to assign her future work if a suitable placement became available. *Id.* ¶ 16. It does not, however, appear that she has worked for Flexible since her placement at the Clorox plant was terminated.

## **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility

---

[5] For her part, Felder-Ward denies that she harassed or cursed at other employees. Pl.'s LR 56.1 ¶¶ 1, 4. The Court will assume that she did not. Felder-Ward's only response to Simon's report, however, is to say that Flexible has no witnesses. Pl.'s Resp. Def.'s LR 56.1 ¶ 13. Lyall's sworn affidavit as to what Simon told him, however, is proper to consider on summary judgment. The Court considers Simon's statements only for their effect on Lyall, not for their truth. *O'Grady v. Commonwealth Edison Co.*, No. 09 C 2539, 2010 WL 4223212, at *2 (N.D. Ill. Oct. 19, 2010) (holding it proper to consider records of poor performance not for their truth, but for their effect on an individual making a termination decision based on the records).

determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

The Court's analysis must begin by articulating the proper standard to apply in analyzing Felder-Ward's claims under Title VII. When the parties completed their briefing in this case, the Seventh Circuit had not yet decided *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). In *Ortiz*, the Seventh Circuit refined the approach that district courts should take in evaluating Title VII claims. Eschewing "the rat's nest of surplus tests" to evaluate Title VII claims (including direct versus indirect methods of proof), *id.* at 765–66, the court refocused the inquiry on "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. Under this inquiry, "[e]vidence must be considered as a whole," regardless of whether it is "direct" or "indirect" in nature (and without reference to those terms). *Id.*

Still, the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),[6] remains a valid (but nonexclusive) method of proving a Title VII claim. *Ortiz*, 834 F.3d at 766; *see David*, 846 F.3d at 224. Moreover, the Seventh Circuit has held that the clarification announced in *Ortiz* applies both to disparate treatment and retaliation claims under Title VII. *Williams v. Office of Chief Judge of Cook Cty. Ill.*, 839 F.3d 617, 626 (7th Cir. 2016) (citing *Ortiz*, 834 F.3d at 764–65).

---

[6] Under this framework, a Title VII plaintiff makes out a *prima facie* case of discrimination by showing: "'(1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer.'" *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (alteration in original) (quoting *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014)).

6

Thus, in evaluating whether Felder-Ward's claims survive summary judgment, the Court will consider the evidence she presents in her favor as a whole. In doing so, the Court will consider whether she has made out a *prima facie* case under the traditional *McDonnell Douglas* framework. Ultimately, however, the Court will focus on the more general inquiry of whether a reasonable jury could find that Flexible took the acts alleged because of her race, and whether Flexible removed her from her assignment at the Clorox plant because of her complaints to Clorox. *See Pearson v. Ill. Bell Tel. Co.*, No. 15 C 653, 2016 WL 7374235, at *6 (N.D. Ill. Dec. 20, 2016) (adopting a similar approach in the wake of *Ortiz*).

## I. Disparate Treatment Claim

Felder-Ward first claims that, in the incidents described above (other than her termination, Pl.'s Resp. Def.'s LR 56.1 ¶ 8), she was discriminated against in the conditions of her employment at the Clorox plant because she is African-American. Whether viewed through *McDonnell Douglas* or the more general inquiry articulated in *Ortiz*, however, Felder-Ward has failed to carry her burden of establishing that a reasonable jury could find that Flexible's purported actions were on account of her race.

### A. Adverse Employment Action

First, as a matter of law, Felder-Ward cannot show that she suffered a materially adverse employment action in relation to her disparate treatment claim.[7] As a general matter, adverse employment actions must entail "'a significant change'" in employment status or benefits. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014) (quoting *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007)). Indeed, "'not everything that makes an employee

---

[7] While an adverse employment action is an element of the *McDonnell Douglas* proof framework, *Ortiz* makes clear that an adverse employment action is a necessary component of a Title VII discrimination claim generally. *Ortiz*, 834 F.3d at 765.

unhappy is an actionable adverse action.'" *Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir. 2000) (quoting *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 511 (7th Cir. 1999)).

In the context of a disparate treatment claim, adverse employment actions generally fall into three categories:

> (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment.

*O'Neal v. City of Chi.*, 392 F.3d 909, 911 (7th Cir. 2004) (citing *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744–45 (7th Cir. 2002)). There is no evidence that Felder-Ward would qualify under the first two categories. The incidents that Felder-Ward describes did not alter her compensation, nor was she transferred into a new position.

In order for an employment action to fall within the third category, it must have resulted in objective hardship. *Herrneiter*, 315 F.3d at 744. Here, Felder-Ward has pointed to no evidence of any hardship. In her deposition, she repeatedly testified that her pay was not affected and the terms and conditions of her employment did not change as a result of the challenged actions. FW's Dep. at 36:16–21, 37:12–15, 42:4–10, 48:13–16, 88:23–89:6. More to the point, she "wasn't upset" when she was initially asked to move tables, *id.* at 37:12–14, and nothing in her deposition or elsewhere suggests that workplace incidents had an appreciable negative effect on her. Rather, she acknowledged that her typical job responsibilities entailed moving and switching from task to task. *Id.* at 27:10–14.

The closest Felder-Ward gets to identifying some sort of objective hardship is her inability to attend her granddaughter's doctor's appointment on the day she was refused leave. *Id.* at 66:16–20. But this is not the sort of objective hardship that rises to the level of an adverse employment action. *Watson v. Potter*, 351 F. App'x 103, 105 (7th Cir. 2009) (holding that denial of a leave request does not rise to the level of an adverse employment action); *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004); *Christian v. Ill. State Bd. of Educ.*, No. 05 C 2735, 2007 WL 2088735, at *6 (N.D. Ill. July 19, 2007) (collecting cases holding that denial of leave requests does not rise to the level of an adverse employment action). Nor do the minor modifications to Felder-Ward's tasks and work arrangements constitute objective hardships as a matter of law. *Potter*, 356 F.3d at 829 (holding that assigning difficult work and work outside typical job responsibilities, without more, is not an adverse employment action); *see also Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 650 (7th Cir. 2011) ("A change in shift assignments will not normally be sufficient to qualify as an adverse employment action, unless it is accompanied by some other detriment.").

For these reasons, Felder-Ward has not established an adverse employment action in relation to her disparate treatment claim as a matter of law.[8] For this reason alone, the Court must grant Flexible's motion for summary judgment as to the disparate treatment claim.

**B.    Similarly Situated Employee**

Not only has Felder-Ward failed to identify an adverse employment action, but she has also failed to identify any similarly situated individuals outside of her protected class who were treated more favorably than she was. Identification of similarly situated comparators is an

---

[8]    Felder-Ward has not suggested that the cumulative effect of the identified incidents constitutes an adverse employment action. Even if she had, however, the discrete and isolated nature of these incidents would preclude such a finding. *Watson v. Potter*, No. 07 C 413, 2009 WL 424467, at *7 (N.D. Ill. Feb. 19, 2009).

essential element of a *prima facie* case under the *McDonnell Douglas* framework and remains a relevant consideration in the wake of *Ortiz*. *See David*, 846 F.3d at 226–27; *Williams*, 839 F.3d at 626–27 (holding failure to identify a similarly situated employee was "fatal" to plaintiff's discrimination claim).

Generally, a Title VII plaintiff's "own uncorroborated, conclusory statements that similarly situated co-workers were treated differently" are insufficient. *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 614 (7th Cir. 2001), *overruled on other grounds by Ortiz*, 834 F.3d 760. Rather, the plaintiff must demonstrate that "[a] similarly situated employee [is] 'directly comparable' to plaintiffs 'in all material respects.'" *Alexander*, 739 F.3d at 981. This is a common-sense inquiry under which courts consider a number of factors, "including whether the similarly situated employee held the same position, had the same supervisor, was subject to the same standards, and engaged in similar conduct." *Id.*

Here, Felder-Ward has produced only conclusory statements that similarly situated Hispanic workers in the Clorox plant were treated more favorably than she was. In her deposition, she testified that "blacks [were] actually treated different [sic] than Hispanics" at the Clorox plant. Pl.'s Dep. at 96:20–21. The affidavit of her co-worker provides a similar, conclusory assessment. Pl.'s Resp. Def.'s LR 56.1, Ex. D, ECF No. 53. These generalized statements are insufficient for a reasonable jury to evaluate whether Hispanic workers at the plant "shared a similar record of misconduct, performance, qualifications or disciplining supervisors such that their different treatment reflects a discriminatory intent on the part of" Flexible. *See Johnson v. Holder*, 700 F.3d 979, 982 (7th Cir. 2012).

In relation to the incident in which she was refused leave, Felder-Ward identifies two employees—Ricky and Patricia—who had the same supervisor and were permitted to take leave that day. Pl.'s Dep. at 62:13–16, 63:9–11. But by her own admission, she does not know when

they had requested leave or why they were granted leave, *id.* at 62:14–64:1, nor has she provided any other facts from which a reasonable jury could conclude they were similarly situated and granted leave over Felder-Ward because of their race. Confusingly, she also states in her response that she "didn't want to leave on the days they [ ] left." Pl.'s Resp. Def.'s Mem. Supp. Mot. Summ. J. at 2, ECF No. 55. If this is so, it only adds to the dissimilarity at issue.

For these reasons, Felder-Ward has failed to identify any similarly situated comparators, which is an essential element of the *McDonnell Douglas* proof framework. And while *McDonnell Douglas* is not the only means of proving her case, *Ortiz*, 834 F.3d at 766, it is difficult for the Court to determine if she was treated differently based on her race without a proper point of comparison.

C. **Viewing Evidence as a Whole Under *Ortiz***

Finally, in viewing the entirety of the evidence, a reasonable jury could not find that Flexible modified the conditions of Felder-Ward's employment by taking the actions that form the basis of her claim. The evidence Felder-Ward has proffered at this stage boils down to the circumstances of the incidents she describes, as well as her (and her co-worker's) generalized assertion that Hispanic workers were treated more favorably at the Clorox plant. Pl.'s Dep. at 96:20–21; Pl.'s Resp. Def.'s LR 56.1, Ex. D. Without more, however, this speculative position is insufficient to survive summary judgment. *Davis v. Brennan*, No. 14 C 753, 2016 WL 5476251, at *3 (N.D. Ill. Sept. 29, 2016) ("[plaintiff] must do more than simply point to her race . . . and argue that she believes that unfavorable things happened to her because of [it].").

Conversely, there is specific evidence that contradicts her view. Felder-Ward acknowledged in her deposition that the nature of her job at the plant was such that she frequently moved around and was reassigned tasks. *Id.* at 27:10–14. More specifically, in reflecting on being asked to move tables, she said she did not know why she had to move, and

that she did not complain to her supervisor that it was because of her race. *Id.* at 36:2–5, 37:9–11. In regard to supervisors' pairing her with African-American co-workers, Felder-Ward clarified that her theory was that some Hispanic co-workers—not Flexible itself—did not want to work with her because of her race. *Id.* at 50:24–51:3. And when asked to elaborate on why being moved among assembly lines was a race issue, she stated, "Because it was," and when pressed further to explain, she said, "I do not know." *Id.* at 55:13–19. Additionally, as discussed above, she testified that she did not know why Ricky and Patricia were granted leave and she was not. *Id.* at 62:17–64:1. Finally, on a more general level, she testified that Flexible was not "racist" and that they "hired a whole lot of blacks," and she concludes only that they treated African-Americans "differently." *Id.* at 95:24–96:2. Based on this evidence, a reasonable jury could not find that Flexible discriminated against her in regard to the conditions of her employment because of her race.

For these reasons, Flexible motion for summary judgment in regard to Felder-Ward's disparate treatment claim is granted.

**II.     Retaliation Claim**

Felder-Ward's second claim is that Flexible terminated her placement at the Clorox plant as retaliation for her complaints to Clorox about discriminatory treatment at the plant.[9] To prove her Title VII retaliation claim, she must show that her placement in the plant was terminated because she complained to Exel about her discriminatory treatment. *See Williams*, 839 F.3d at 627 (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)). As with her

---

[9] Felder-Ward contends that she "was fired because [she] called the Clorox corporate office in October to report gang activity and how [she] was being treated." Def.'s LR 56.1 ¶ 6; *see also* Pl.'s Dep. at 71:19–72:13. The Court will limit its consideration of her retaliation claim, however, to her complaints about her treatment at the plant. Merely complaining about gang activity—without tying that activity to a good faith belief in a Title VII violation, *Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187, 195 (7th Cir. 1994)—does not constitute protected expression that could form the basis of a Title VII retaliation claim.

disparate treatment claim, however, Felder-Ward has failed to make out *prima facie* elements of her case under the *McDonnell Douglas* framework,[10] and when viewing the evidence as a whole under *Ortiz*, a reasonable jury could not conclude that her placement was terminated because of her complaints to Exel.

Just as with her disparate treatment claim, Felder-Ward has failed to meet her burden of identifying a similarly situated employee who did not engage in protected activity (*i.e.*, complaining about discriminatory treatment to Clorox) and was treated more favorably than her. She has not identified anyone with whom a comparison could be drawn. Without a similarly situated individual, her claim cannot proceed under the *McDonnell Douglas* framework. *Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 786 (7th Cir. 2007).

Moreover, when the Court views the evidence as a whole, it is persuaded that no reasonable jury could find that Felder-Ward's placement was terminated because of her complaints to Clorox. As with her claims of disparate treatment, Felder-Ward relies solely on her conclusory assertion that her placement was terminated because of her complaint. Pl.'s LR 56.1 ¶ 6. The only facts in the record that corroborate this theory is that her termination took place after she made her complaint and that Felder-Ward alleges that Lyall warned the Flexible employees that further calls to Clorox could result in termination. Pl.'s Dep. at 80:1–7. As for the first point, the mere fact that an adverse employment action follows activity protected under Title VII is insufficient evidence from which a jury can conclude causation. *Andonissamy v. Hewlett-*

---

[10] In the context of a Title VII retaliation claim, the *McDonnell Douglas* framework applies much the same. Instead of showing membership in a protected class, however, the plaintiff must demonstrate protected activity. *Freelain v. Vill. of Oak Park*, No. 13 CV 3682, 2016 WL 6524908, at *3 (N.D. Ill. Nov. 3, 2016).

*Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008) (holding that temporal proximity alone is insufficient to create a genuine issue of material fact on summary judgment in the context of a Title VII retaliation claim). And here, the date of termination of Felder-Ward's placement was nearly two months following her complaints to Clorox, which undercuts any inference of retaliatory motive. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) (declining to draw a temporal inference of causation where sixty days passed between an employee's protected activity and an adverse employment action).

Moreover, even if Flexible knew about her complaints of discriminatory treatment to Clorox,[11] there is no dispute[12] that Flexible terminated Felder-Ward from her placement at Clorox because Exel had asked Flexible to do so as part of a reduction in force, and Flexible was simply complying with its contract with Exel when doing so.[13] Def.'s 56.1 Stmt. ¶¶ 4, 15–16. Felder-Ward does not offer any evidence that this stated reason is pretextual. *See Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 564 (7th Cir. 2016) (granting summary judgment for defendant in Title VII retaliation case where plaintiff did not call the honesty of employer's

---

[11] Felder-Ward recounted a conversation with Lyall, a Flexible supervisor, in which he purportedly told employees that Flexible had heard that someone had complained to Clorox about the gang fight (*i.e.*, the same gang fight Felder-Ward called to complain about). Pl.'s Dep. at 80:1–7. As Felder-Ward's call to Clorox had included complaints about both the gang fight and discriminatory treatment, *id.* at 71:15–72:5, it is certainly possible that Clorox would have informed Flexible of both of the complaints when it passed on the information.

[12] Felder-Ward responded that she was "unable to admit or deny" Flexible's account of her termination because she had "no knowledge of that fact." Pl.'s Resp. Def.'s 56.1 Stmt. ¶¶ 15, 16. But such a response is insufficient to create a genuine dispute of material fact on summary judgment, *Doctor's Data*, 170 F. Supp. 3d at 1096–97, and Felder-Ward does not offer anything other than timing to support her conclusion that the termination was connected to her complaints.

[13] It bears repeating that Felder-Ward disputes at length whether she cursed at or harassed other employees, pointing out that no complaints were filed against her and that, if she was in fact harassing other employees, Flexible would have violated its own anti-discrimination policies by not disciplining her earlier. Pl.'s LR 56.1 Stmt ¶¶ 1–2, 4, 6–8. But Flexible did not terminate Felder-Ward because she cursed and harassed other employees. It terminated Flexible based on Exel's request that it do so, and Felder-Ward does not contest this fact.

stated reasons for terminating him into doubt); *Venegas v. Aerotek, Inc.*, 171 F. Supp. 3d 765, 773 (N.D. Ill. 2016) (holding a jury could not attribute retaliatory intent to a staffing agency where it "had no input or control over [a client's] decision to end plaintiff's assignment); *see also Darbha v. Capgemini Am. Inc.*, 492 F. App'x 644, 647 (7th Cir. 2012) ("[N]othing is suspicious about an employer relying on a poor performance review to decide whom to lay off during a reduction in force.").

For these reasons no reasonable jury could find based upon the entirety of the evidence that Flexible terminated Felder-Ward's placement at the Clorox plant because of her complaints to Clorox of discriminatory treatment. Flexible's motion for summary judgment on Felder-Ward's retaliation claim is therefore granted.

## Conclusion

For the foregoing reasons, Flexible's motion for summary judgment [47] is granted. Judgment will be entered in favor of Defendant Flexible Staffing Services Inc. Civil case terminated.

**IT IS SO ORDERED.**  **ENTERED 3/9/18**

_____
**John Z. Lee**
**United States District Judge**